1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EDUARDO ANTONIO MONTOYA-                    No.  1:26-cv-0693-DJC-CKD P
     GARCIA,
12
                  Petitioner,
13                                               ORDER and FINDINGS &
          v.                                     RECOMMENDATIONS
14
     WARDEN, GOLDEN STATE ANNEX
15   DETENTION FACILITY,

16                Respondents.

17

18        Petitioner Eduardo Antonio Montoya-Garcia is detained by Immigrations and Customs

19   Enforcement ("ICE") and seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. This matter

20   is referred to the undersigned by the court's order dated February 3, 2026, and by Local Rule

21   302(c)(17). See 28 U.S.C. § 636(b)(1). For the following reasons, the undersigned recommends

22   the petition be granted to the extent that respondents be ordered to provide petitioner with a bond

23   hearing.

24        **I.      Background**

25        Petitioner is a citizen and native of Guatemala. (ECF No. 8-1 at 1-4.) Under the petition's

26   allegations, petitioner entered the United States in March 1996. (ECF No. 1 at 5.) Under

27   respondent's evidence, on February 13, 2016, at the San Francisco, CA POE, petitioner was

28   "paroled in by Customs and Border Protection." (ECF No. 8-1 at 3.)

                                                1

1    Under the petition's allegations, ICE arrested petitioner in July 2025 without showing him

2    a warrant. (ECF No. 1 at 6.) Petitioner had a "bond hearing" on September 29, 2025, at which the

3    immigration judge ruled "he has no jurisdiction."[1] (Id.) On October 2025, petitioner submitted an

4    appeal on which, to date, he has not heard anything back. (Id.)

5    Petitioner has been detained in ICE custody since July 2025. (ECF No. 1 at 5.) He alleges

6    his detention has become prolonged in violation of due process. (Id. at 4-5.) Petitioner requests

7    release or a bond hearing before an immigration judge where the government must establish by

8    clear and convincing evidence he presents a risk of flight or danger. (Id. at 17.)

9    In light of petitioner's requested relief, the district judge assigned to this case construed

10   the petition as also presenting a motion for temporary restraining order and ordered respondents

11   to file any opposition to a temporary restraining order. (ECF No. 6.) Respondents opposed the

12   motion for temporary restraining order, asserting petitioner was arrested and placed in removal

13   proceedings following his criminal convictions for felony false imprisonment in violation of

14   California Penal Code section 237(a) and misdemeanor annoying or molesting a child under 18

15   years of age, in violation of California Penal Code section 647.6(a)(1). (ECF No. 8 at 2.)

16   Respondents assert petitioner's detention during removal proceedings is mandatory pursuant to 8

17   U.S.C. § 1226(c). (Id. at 3, 5.)

18   On February 3, 2026, the district judge assigned to this case denied the motion for

19   temporary restraining order, finding petitioner had not established a likelihood of success on the

20   merits in light of the information provided by respondents in their opposition. (ECF No. 10.)

21   Respondents filed an opposition to the granting of the petition in which they rely on their

22   arguments made in opposition to the motion for temporary restraining order, (ECF No. 16.)

23

24   _____

25   [1] The undersigned infers that petitioner did not have a bond hearing but rather a "Joseph hearing."
     When a person is detained under § 1226(c) and believes he is not covered by § 1226(c), he may

26   obtain what is known as a "Joseph hearing." Jennings, 583 U.S. at 289 n. 1 (citing Matter of
     Joseph, 22 I. & N. Dec. 799 (BIA 1999)). At a Joseph hearing, that person "may avoid mandatory

27   detention by demonstrating that he is not [a noncitizen], was not convicted of the predicate crime,
     or that the [Government] is otherwise substantially unlikely to establish that he is in fact subject

28   to mandatory detention." Demore, 538 U.S. at 514, n. 3.

1    Petitioner filed a reply.[2] (ECF No. 18.) In reply, petitioner argues the Department of Homeland

2    Security had no warrant or probable cause to arrest him and did not make an individualized

3    custody determination before transferring him to an out-of-town detention center. (Id. at 2.) He

4    states his criminal record is no basis for detention because he has served all time related to the

5    charges. (Id. at 8.) He argues his detention is statutorily unauthorized and violates his due process

6    rights. (Id. at 6-13.)

7         **II.     Legal Standard**

8         The Constitution guarantees the availability of the writ of habeas corpus "to every

9    individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004)

10   (citing U.S. Const., Art I, § 9, cl. 2). Relevant here, "in cases that do not involve a final order of

11   removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. §

12   2241 where the petitioner "challenges his confinement on statutory and constitutional grounds."

13   Nadaraja v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord Flores-Torres v. Mukasey,

14   548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's

15   habeas petition challenging his detention" in ICE custody).

16        **III.    Discussion**

17        To determine whether petitioner's detention is authorized and lawful, the court first looks

18   to the statutory provision purporting to confer authority for his detention. See Prieto-Romero v.

19   Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Respondent asserts petitioner is mandatorily detained

20   during removal proceedings pursuant to 8 U.S.C. § 1226(c). (ECF No. 8 at 1.)

21        It is undisputed that petitioner's removal proceedings are ongoing. "Section 1226

22   generally governs the process of arresting and detaining… [noncitizens] pending their removal[,]"

23   and "distinguishes between two different categories of [noncitizens]. Jennings v. Rodriguez, 583

24   U.S. 281, 288 (2018). "Section 1226(a) sets out the default rule: The Attorney General may issue

25   a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be

26   removed from the United States.'" Jennings, 583 U.S. at 288 (citing § 1226(a)). "Except as

27   _____

28   [2] Petitioner also requested an extension of time to file the reply. (ECF No. 13.) The request for an extension of time is granted. Petitioner's reply is deemed timely filed.

1  provided in subsection (c) of this section," the Attorney General "may release" an alien detained

2  under § 1226(a) "on ...bond" or "conditional parole." Id.

3      Section 1226(c), however, carves out a statutory category of noncitizens who may not be

4  released under § 1226(a). Jennings, 583 U.S. at 289. The government "shall take into custody"

5  noncitizens who are inadmissible or deportable because they have committed certain criminal

6  offenses, 8 U.S.C. § 1226(c)(1)(A)-(B). The Supreme Court has explained that detention of a

7  noncitizen pursuant to § 1226(c) must continue pending a decision on whether he is to be

8  removed from the United States. Jennings, 583 U.S. at 283. The only statutory exception to

9  detention under section 1226(c) is if the Attorney General decides that release is "necessary for

10  witness-protection purposes and that the alien will not pose a danger or a flight risk." Id.; see 8

11  U.S.C. § 1226(c)(4).

12      Petitioner does not challenge respondent's determination that he is subject to 8 U.S.C. §

13  1226(c) in the pending petition. Instead, petitioner challenges his detention as prolonged in

14  violation of his due process rights. Thus, the undersigned considers whether the constitution

15  requires some protection petitioner has not received in connection with his detention since July

16  2025.

17      While the Supreme Court has held the mandatory detention provisions of 8 U.S.C. §

18  1226(c) are constitutional, petitioner's detention since July 2025 in this case has surpassed the

19  six-month period approved in the facial due process challenge in Demore. See Demore v. Kim,

20  538 U.S. 510, 530 (2003). In Demore, the Supreme Court noted "the detention at stake under §

21  1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and

22  about five months in the minority of cases in which the [noncitizen] chooses to appeal." Demore,

23  538 U.S. at 530.

24      The Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary

25  prolonged detention without any process is constitutional[.]" Rodriguez v. Marin, 909 F.3d 252,

26  256 (9th Cir. 2018). However, it "remains an open question" at what "point (if any)… prolonged

27  detention under Section 1226(c) without an individualized hearing becomes unconstitutional[.]"

28  Doe v. Becerra, 704 F. Supp. 3d 1006, 1015 (N.D. Cal. 2023), abrogated on other grounds by Doe

1    v. Garland, 109 F.4th 1188 (9th Cir. 2024).

2        "Demore does not bar an as-applied challenge to… prolonged detention [under § 1226(c)]

3    without a hearing to determine whether such detention is justified." Singh v. Chestnut, et al., No.

4    1:26-CV-00127 DC SCR, 2026 WL 575544, at *4 (E.D. Cal. Mar. 2, 2026). The undersigned

5    concludes the court should review petitioner's as-applied due process challenge in this case. See

6    id. (reviewing as-applied challenge to prolonged detention under § 1225(c) without a hearing).[3]

7        "[T]he Due Process Clause applies to all 'persons' within the United States, including

8    aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v.

9    Davis, 533 U.S. 678, 693 (2001). Having been "paroled in by Customs and Border Protection" in

10   2016 (ECF No. 8-1 at 3), petitioner had a liberty interest in his continued release following that

11   parole into the United States. See Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

12       In 2024, petitioner was convicted of felony false imprisonment and misdemeanor

13   annoying or molesting a child under 18 years of age and sentenced to 4 days in jail and probation

14   for two years. (ECF No. 8-1 at 2.) Upon his release from jail for those offenses, immigration

15   authorities did not immediately detain petitioner. Rather, he was released back into his

16   community before being arrested in July 2025. (See ECF No. 1 at 6 (describing arrest for current

17   detention as occurring while plaintiff visited a friend).) Petitioner had a liberty interest in his

18   continued freedom despite his criminal convictions. See G. M. L. v. Warden of the Golden State

19   Annex Detention Facility, et al., No. 1:26-CV-0047-TLN-EFB, 2026 WL 472987, at *3 (E.D.

20   Cal. Feb. 19, 2026) (rejecting conclusion that having a criminal history strips away a non-

21   citizen's liberty interest in continued release).

22       To determine what procedures, if any, are required by due process, the undersigned will

23   _____

24   [3] But see Oth v. Chestnut, No. 1:25-CV-01367-KES-HBK (HC), 2026 WL 323053, at *6 (E.D.
     Cal. Feb. 6, 2026) (recommending petition be denied because "Due process doesn't require bond
25   hearings for criminal [noncitizens] mandatorily detained [for immigration purposes] under §
     1226(c)—even for prolonged periods."); Singh v. Warden of California City Det. Facility, No.
26   1:25-CV-01862-DJC-EFB, 2026 WL 457119, at *5 (E.D. Cal. Feb. 18, 2026) (finding "limited
     legal authority for petitioner's position that, as a matter of law, there is a temporal point at which
27   a detention under section 1226(c) becomes so lengthy as to violate due process" but making no
     recommendation to the district judge on that issue because the petitioner failed to show that such
28   a principle would apply to his four-month detention).

1    apply the three-part test of <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976). <u>See</u> <u>Singh v. Chestnut, et</u>

2    <u>al.</u>, 2026 WL 575544, at *4 (finding <u>Mathews</u> provides the appropriate test for due process

3    challenges to prolonged detention under § 1226(c)). The <u>Mathews</u> test considers three factors: (1)

4    the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's

5    interest. 424 U.S. at 335.

6        "Freedom from imprisonment—from government custody, detention, or other forms of

7    physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." <u>Zadvydas</u>,

8    533 U.S. at 690. As to first <u>Mathews</u> factor, petitioner's parole into the Unites States and many

9    years of residing at liberty in the United States creates a powerful interest for him in his continued

10    liberty. <u>Doe v. Becerra</u>, 787 F. Supp. 3d at 1094. While detained since July 2025, petitioner has

11    been separated from his family, including his seven children. (ECF No. 1 at 5.) He has been

12    unable to work to support his family in his role as "the primary bread winner." (<u>Id.</u>) He does not

13    feel he is receiving proper care for a knee injury. (<u>Id.</u> at 6.) Petitioner's private interest in

14    remaining free from this detention is substantial. <u>See</u> <u>Singh</u>, 2026 WL 575544, at *4.

15        Considering the second <u>Mathews</u> factor, the risk of erroneous deprivation to petitioner is

16    considerable given the immigration judge at petitioner's only post-deprivation hearing ruled he

17    "he ha[d] no jurisdiction." (ECF No. 1 at 6.) While it is not this court's role to determine whether

18    petitioner is a danger or flight risk, the limited record appears to provide a basis for an

19    immigration judge to find petitioner is neither. Petitioner has served his 4-day jail sentence for his

20    two criminal convictions and has otherwise lived with his family, employed in construction, and

21    without any other encounters with law enforcement for many years. (<u>See</u> ECF No. 1 at 5-6.)

22    Without a hearing to determine whether petitioner's detention is justified, there is a serious

23    likelihood he could be erroneously deprived of his liberty interest. <u>See</u> <u>G. M. L.</u>, 2026 WL

24    472987, at *5 (holding the petitioner's detention under § 1226(c) exceeding six months impacted

25    the petitioner's private interest and supported granting preliminary injunctive relief); <u>Jimenez v.</u>

26    <u>Wolf</u>, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk

27    of an erroneous deprivation where petitioner had not received any bond or custody

28    redetermination hearing during his one-year detention under § 1226(c)). In addition, because the

1   immigration judge at petitioner's only post-deprivation hearing found he had no authority, the

2   probative value of additional procedural safeguards is high. See G. M. L., 2026 WL 472987, at *4

3   (where no procedural safeguards have been provided, the probative value of additional procedural

4   safeguards is high).

5        Turning to the third Mathews factor, the government has an interest in the steady

6   enforcement of its immigration laws, but the government's interest in re-detaining petitioner

7   without procedural protections is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal.

8   2019); see also Doe v. Becerra, 787 F. Supp. 3d at 1094 (custody hearings in immigration court

9   are routine and impose a "minimal" cost on the government). The effort and cost required to

10  provide the procedural safeguards at issue are negligible. See G. M. L., 2026 WL 472987, at *5.

11  This factor favors petitioner.

12       Considering other factors which some court consider to be relevant,[4] the undersigned

13  notes petitioner's current detention at approximately eight months is longer than the four days he

14  spent in jail for the offenses which respondents assert trigger mandatory detention under 8 U.S.C.

15  § 1226(c). See Scott v. Wamsley, No. 2:25-CV-1819, 2025 WL 3514304, at *8 (W.D. Wash.

16  Dec. 8, 2025), reconsideration denied, No. 2:25-CV-1819, 2026 WL 83971 (W.D. Wash. Jan. 12,

17  2026) (noting some district courts consider whether the challenged detention will exceed the time

18  the petitioner spent in prison for a crime that made him removable and the nature of the crimes

19  the petitioner committed). While the facts underlying petitioner's convictions are not before this

20  court, district courts have found detention under § 1226(c) without a bond hearing is

21  [4] See, e.g., Castro v. White, No. 2:24-CV-01476-JNW-BAT, 2024 WL 5496639, at *3 (W.D.
22  Wash. Dec. 17, 2024), report and recommendation adopted, No. 2:24-CV-01476-JNW-BAT,
    2025 WL 949308 (W.D. Wash. Mar. 27, 2025) (stating in cases involving § 1226(c), where the
23  noncitizen has not previously received a bond hearing, some district courts consider the following
    factors: "(1) the total length of detention to date; (2) the likely duration of future detention; (3)
24  whether the detention will exceed the time the petitioner spent in prison for the crime that made
    him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions
25  of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the
    removal proceedings caused by the government; and (8) the likelihood that the removal
26  proceedings will result in a final order of removal."). When courts apply this test, the first factor,
27  "length of detention," is "the most important factor." Scott v. Wamsley, No. 2:25-CV-1819, 2025
    WL 3514304, at *8 (W.D. Wash. Dec. 8, 2025), reconsideration denied, No. 2:25-CV-1819, 2026
28  WL 83971 (W.D. Wash. Jan. 12, 2026).

1   unconstitutional for noncitizens with more seemingly more severe convictions. See, e.g., Carballo

2   v. Andrews, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *3 (E.D. Cal. Aug. 15,

3   2025) (finding detention under § 1226(c) without a hearing violated due process where the

4   petitioner lived in the community for five years after serving a sentence for first-degree murder);

5   Pham v. Becerra, No. 23-CV-01288-CRB, 2023 WL 2744397, at *4-7 (N.D. Cal. Mar. 31, 2023)

6   (finding detention under § 1226(c) without a hearing violated due process where the petitioner

7   lived in the community for six years after serving a six-month sentence for a sex offense). Finally,

8   based on the limited record presently before this court, the likely duration of petitioner's future

9   detention, and whether delays in removal proceedings are attributable to petitioner or the

10  government are unknown, and to the extent these factors are relevant, the undersigned would find

11  them neutral.

12        The undersigned concludes the Mathews factors support granting petitioner relief and no

13  other relevant factors negate that conclusion. Petitioner is entitled to a bond hearing where he

14  receives an individualized determination under the Fifth Amendment Due Process Clause. See G.

15  M. L., 2026 WL 472987, at *5 (granting preliminary injunctive relief for a bond hearing where

16  the petitioner's detention under § 1226(c) exceeded six months); see also Singh v. Albarran, No.

17  1:26-CV-00940-DC-DMC (HC), 2026 WL 392169, at *4 (E.D. Cal. Feb. 12, 2026) (granting

18  temporary restraining order for a bond hearing to a petitioner detained for twelve months under §

19  1225(c)). The record indicates petitioner has not been afforded a bond hearing where he received

20  an individualized determination, because the immigration judge at petitioner's only post-

21  deprivation hearing ruled he had no jurisdiction. Therefore, respondents have denied petitioner

22  the "fundamental requirement of due process ... the opportunity to be heard at a meaningful time

23  and in a meaningful manner." Mathews, 424 U.S. at 333. The undersigned will recommend the

24  petition be granted and petitioner be afforded relief in the form of a bond hearing.

25        **IV.    Other Pending Motions**

26        Petitioner requests to proceed under a pseudonym. (ECF No. 13.) "The normal

27  presumption in litigation is that parties must use their real names." Doe v. Kamehameha

28  Schools/Bernice Pauahi Bishop Est., 596 F.3d 1036, 1042 (9th Cir. 2010); see also Fed. R. Civ. P.

1    10(a) ("[t]he title of the complaint must name all the parties"); Fed. R. Civ. P. 17(a)(1) ("An

2    action must be prosecuted in the name of the real party in interest."). However, parties may

3    proceed under a pseudonym where there is a threat that an individual will suffer retaliation from

4    third parties. See Does I thru XXIII v. Advanced Textile, 214 F.3d 1058, 1067 (9th Cir. 2000)

5    ("[T]his court and others have concealed parties' identities in order to protect them from

6    retaliation by third parties and also to protect nonparties from reprisals."). Respondents will not

7    suffer prejudice as petitioner's identity is known to the court and respondents. The public interest

8    in knowing petitioner's identity is minimal and outweighed by petitioner's need for anonymity.

9    Accordingly, petitioner's request to proceed under a pseudonym is granted.

10         Petitioner also requests appointment of counsel. (ECF No. 15.) There currently exists no

11   absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d

12   453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of

13   the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases.

14   Because it is now being recommended the petition be granted to the extent that petitioner receive

15   a bond hearing, the court does not find the interests of justice require appointment of counsel at

16   the present time.

17         **V.    Order and Recommendation**

18         In accordance with the above, IT IS ORDERED as follows:

19         1. Petitioner's motion for extension of time (ECF No. 13) is GRANTED and petitioner's

20            reply is deemed timely filed.

21         2. Petitioner's motion to proceed under a pseudonym (ECF No. 14) is GRANTED.

22         3. Petitioner's motion for appointment of counsel (ECF Nos. 15) is DENIED without

23            prejudice.

24         In addition, IT IS RECOMMENDED as follows:

25         1. The petition under 28 U.S.C. § 2241 be granted to the extent that respondents be

26            ordered to provide petitioner with a bond hearing before an immigration judge at

27            which the government shall bear the burden of justifying petitioner's continued

28            detention by clear and convincing evidence, within fourteen (14) days of any adoption

1   of these findings and recommendations.

2       2.  Respondent be further directed to file a notice certifying compliance with the above

3           provision within seven (7) days from the date of the bond hearing.

4       These findings and recommendations are submitted to the United States District Judge

5   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14)

6   days after being served with these findings and recommendations, any party may file written

7   objections with the court and serve a copy on all parties. Such a document should be captioned

8   "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

9   objections shall be filed and served within seven (7) days after service of the objections. The

10  parties are advised that failure to file objections within the specified time may waive the right to

11  appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12  Dated:  March 9, 2026

13  _____
    CAROLYN K. DELANEY
14  UNITED STATES MAGISTRATE JUDGE

15

16  8 mont0693.mer

17

18

19

20

21

22

23

24

25

26

27

28